

# Missouri Court of Appeals

### Southern District

#### In Division

STATE OF MISSOURI, )
)
      Respondent, )
) No. SD37356
    vs. )
) FILED: January 26, 2023
ARCH KEITH ROBINSON, )
)
      Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

#### Honorable Gayle L. Crane, Judge

## **AFFIRMED**

Arch Robinson ("Defendant") appeals his conviction by a jury of one count of first-degree statutory sodomy, section 566.062, and one count of second-degree child molestation, section 566.068.[1]  Raising three points on appeal, Defendant asserts the trial court erred by (1) allowing the admission of improper propensity evidence from Defendant's adult daughter, K.R.; (2) failing to grant a requested mistrial after the State questioned Defendant's adult daughter, M.D., about their relationship, which Defendant argued was undisclosed propensity evidence; and (3) failing to grant a mistrial after the State questioned Defendant regarding whether he got away with a prior criminal act.  Finding his points to be without merit, we affirm.

---

[1] All statutory citations are to RSMo 2016, unless otherwise indicated.

**Factual and Procedural Background**

Victim, H.D., was born in June of 2009. Defendant is H.D.'s grandfather. In July 2020, H.D., along with her stepsister and stepbrother, spent the night at Defendant's house. H.D. and her stepsister built a blanket fort in the living room, and Defendant laid down with them inside the fort to watch videos on his phone. While they were watching videos, Defendant touched H.D. on her chest, stomach, thighs, and genitals, both over and under her clothes. He also put his mouth on hers and put his tongue in her mouth. Defendant left and H.D. got her phone and sent text messages to her mother, stepfather, and grandmother telling them what had happened and asking them to pick her up. When they did not respond, she went back to the fort. Defendant later returned and tried to touch her again. H.D. eventually fell asleep and woke up when her mother and stepfather came to pick her up.

H.D.'s parents contacted the police, who responded to the scene and conducted an investigation at Defendant's house. H.D. participated in a forensic interview at a child advocacy center, which was recorded and played for the jury at Defendant's trial. Defendant was subsequently charged with one count of first-degree statutory sodomy and one count of second-degree child molestation.

Prior to the trial, the State filed notice of its intent to offer evidence of Defendant's prior criminal acts at trial, pursuant to Article I, Section 18(c) of the Missouri Constitution, in order to demonstrate Defendant's propensity to commit the charged offenses. The State sought to admit propensity evidence in the form of testimony by Defendant's adult daughter, K.R. The court heard argument and overruled Defendant's objection. At trial, defense counsel again raised the objection and was granted a continuing objection. At trial, K.R. testified that Defendant had sexually assaulted her when she was 14 years old. She stated he groped her breasts while she

was sitting on his lap, and that he kept going even when she started crying and asked him to stop. She also testified he touched her inappropriately on another occasion.

H.D. testified and described her interaction with Defendant on the night in question. Testimony was also received from H.D.'s stepsister, mother, stepfather, and the investigating officer. Defendant testified he did not touch H.D. or K.R. inappropriately.

The jury found Defendant guilty on both counts. The court sentenced Defendant to terms of imprisonment of 25 years on Count I and 15 years on Count II, with the sentences to run concurrently. This appeal follows.

**Discussion**

*Point I*

Defendant first claims the trial court erred in overruling defense counsel's objections and allowing the testimony of K.R. to be presented to the jury. Defendant argues his constitutional rights to due process, a fair trial, and to be tried for the charged offense were violated. He supports this argument by alleging the testimony should not have been admitted because it created too great a risk of unfair prejudice. Furthermore, he alleges the offense related to K.R. was unadjudicated, remote in time, the State did not present the evidence in a dispassionate way, and the jury was told that Defendant was not charged for this alleged crime, which allowed the prosecutor to ask Defendant if he "got away with it."

The trial court has broad discretion in determining whether to admit or exclude evidence, and its evidentiary rulings are reviewed for abuse of discretion. *State v. Marsh*, 618 S.W.3d 625, 629 (Mo.App. 2020). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Peirano*, 540 S.W.3d 523, 527 (Mo.App. 2018). We will reverse "only if the error was

3

so prejudicial it deprived the defendant of a fair trial." *Marsh*, 618 S.W.3d at 629 (internal quotation marks omitted).

Article I, Section 18(c) of the Missouri Constitution provides that:

"[I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged.  The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice."

The weighing of propensity evidence's probative value against its danger of unfair prejudice is a case-specific question, and the factors considered and the weight given to those factors will vary from case to case.  *State v. Williams*, 548 S.W.3d 275, 288 (Mo. banc 2018).  For evidence of a prior act to be probative, it must "tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred."  *Id.* at 289.  Factors that may be considered in evaluating the probative value of such evidence include the similarity between the prior act and the charged act, the amount of time between the acts, and the prosecution's need for the evidence to prove its case.  *Id.*  Factors that may be considered in evaluating the risk of unfair prejudice include whether the jury knows the defendant was punished for the prior act, how the prosecution proves the prior act, how the prosecution uses the evidence of the prior act, and whether the evidence of the prior act eclipses the evidence of the charged crime.  *Id.* at 290-91.

In using the *Williams* framework, this court notes the similarity of the acts to which K.R. testified and the acts for which Defendant was charged.  Both victims were of a similar age at the time of the alleged inappropriate touching, both victims were relatives of Defendant, and both acts involved Defendant groping the victim's breasts.  Although approximately 21 years elapsed between the two acts, remoteness of time does not automatically render evidence of prior

4

criminal acts inadmissible. *State v. Prince*, 534 S.W.3d 813, 819 (Mo. banc 2017). On the contrary, "an inference of propensity might be proper notwithstanding a significant time lapse between the prior crime and the charged crime if the two crimes are highly similar." *Williams*, 548 S.W.3d at 289. Missouri courts have found on multiple occasions that evidence of prior acts admitted under Section 18(c) was admissible even when the acts occurred over twenty years before the acts charged. *Peirano*, 540 S.W.3d at 528-30 (involving evidence of several acts whose gaps with the charged act were between 19 and 27 years); *State v. Brammer*, 614 S.W.3d 18, 27-28 (Mo.App. 2020) (involving evidence of convictions that occurred over 25 years in the past).[2] Like the present case, the key factor in these cases was a strong similarity between the charged act and the prior acts that outweighed any concerns about temporal distance. Thus, the propensity evidence in K.R.'s testimony had significant probative value.

Having considered the probative value in K.R.'s testimony, we must then weigh the danger of unfair prejudice. This court is careful to note that the State sought to prove the prior act through testimony by the victim, which creates a greater risk of prejudice than, for example, a stipulation of a prior conviction. *Williams*, 548 S.W.3d at 290. However, despite Defendant's claim that "[t]he State chose to make this case about [K.R.]," the State's actual use of the prior act evidence was fairly limited. K.R. was the only propensity witness, while all of the State's other witnesses spoke only about the charged acts against H.D. The prosecutor asked Defendant a few questions about K.R. during cross-examination and briefly mentioned K.R.'s testimony during her closing argument. In general, the focus of the trial remained firmly on H.D. and the

---

[2] Courts in other jurisdictions with evidentiary provisions similar to Section 18(c) have likewise found evidence of prior acts to be admissible despite large temporal gaps. *See, e.g., United States v. Sanchez*, 42 F. 4th 970 (8th Cir. 2022) (over 35 years); *State v. Boysaw*, 439 P.3d 909 (Kan. 2019) (26 years); *State v. Kibbee*, 815 N.W.2d 872 (Neb. 2012) (between 14 and 26 years).

acts for which Defendant was charged. As the Court explained in **Williams**, "if the prosecution spends relatively little time on the issue of a defendant's prior crimes and merely uses the evidence for its proper purpose (namely, to suggest the defendant has a propensity to commit the charged crime), the danger decreases and may—on balance—not be unfair." **Id**. at 291. Although K.R.'s testimony being received as the first witness may have created some risk of unfair prejudice to Defendant, we cannot conclude that the risk was so great as to substantially outweigh the testimony's considerable probative value.

In addition, Defendant alleges the State's cross-examination question, wherein the prosecutor asked, "Got away with it; didn't you?" bolsters the argument the jury could have determined Defendant was not punished for his actions as they related to his daughter, K.R. However, as discussed below, the trial judge's actions minimized any unfair prejudice to Defendant from the question of the State.

Defendant relies heavily on a concurring opinion by Judge Powell in **State v. Minor**, 648 S.W.3d 721 (Mo. banc 2022), warning against the admission of "mere allegations of unadjudicated prior bad acts." **Id**. at 738. Judge Powell identifies two particular dangers that may arise in the presentation of such evidence:

> First, instead of the stoic and emotionless presentation of an exhibit evincing the existence of a prior conviction, we have a living, breathing person recounting unfathomable details of traumatic events and abuse. Second, on top of the increased emotional effect of such evidence lies the fundamental problem of establishing the defendant engaged in the unadjudicated criminal act. … The presentation of evidence necessary to demonstrate the defendant committed an unadjudicated act effectively creates a trial within the trial. Unlike an exhibit of one or more prior criminal convictions that speaks for itself, allegations of unadjudicated, prior criminal acts inescapably will be accompanied and supported by evidence demonstrating the allegations occurred. … In addition to the emotional testimony from an alleged victim of sexual abuse, therefore, a mountain of other evidence, extrinsic to the underlying criminal charges, is often

6

necessary to establish the defendant committed the alleged, unadjudicated sexual abuse.

*Id.* at 739.

Defendant implores this court to heed Judge Powell's very well-reasoned recitations of the dangers of unadjudicated prior bad acts, but fails to identify how either of these risks actually materialized in his trial. Although K.R. testified regarding past unadjudicated events, her testimony was succinct and not overly emotional. While the cold record cannot record all displays of emotion, the trial judge was in the best position to determine whether any such displays created an unfair risk of prejudice.

Moreover, the limited testimony of K.R. certainly did not constitute a "trial within the trial" scenario. Unlike the evidence of the prior act in *Minor*, which "spanned two of the four days of trial devoted to the State's case-in-chief and took up 228 pages of transcript," K.R.'s testimony took up only 12 pages of transcript and the prosecution did not call any other witnesses to present evidence of Defendant's prior acts. *Id.* at 741.[3]

Therefore, based upon the record before this court we cannot conclude that the trial court abused its discretion by admitting the testimony of K.R. Point I is denied.

*Point II*

Defendant asserts the trial court erred in overruling his request for a mistrial based on a series of questions asked by the prosecutor about Defendant's other daughter, M.C. During the State's cross-examination of Defendant, the following exchange occurred:

Q: This is not the first time you've had a family get torn apart; is it?

---

[3] In prior cases where Missouri courts have found error in the admission of evidence of unadjudicated prior bad acts, the risk of prejudice was greater than in the present case. For example, in *State v. Brown*, 596 S.W.3d 193 (Mo.App. 2020), the prosecution presented graphic and emotionally-charged testimony from the victims of the defendant's prior acts and used the propensity evidence to repeatedly refer to the defendant as a "pedophile." The risks warned about in the *Minor* concurrence manifested themselves during the victims' testimony in *Brown* to a much greater extent than in the present case.

A: No, it's not.
Q: You have a daughter named [M.C.]; don't you?
A: I do have, yes.
Q: When is the last time you talked to [M.C.]?
A: You know, I'm going to say, honestly, approximately – it's been probably over 20 years.
Q: She stopped talking to you when she was a teenager too; didn't she?

Defendant's counsel timely objected based on relevance, and the prosecutor agreed to move on to another line of questioning. Defendant argues that this questioning represented improper propensity evidence that resulted in unfair prejudice.

A trial court's denial of a motion for mistrial is reviewed for abuse of discretion. *State v. Vickers*, 560 S.W.3d 3, 27 (Mo.App. 2018). Abuse of discretion occurs "only when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation marks omitted). "A mistrial is a drastic remedy that should be granted only in extraordinary circumstances." *Id.* (internal quotation marks omitted).

The trial court instructed the jury with the standard instruction, "You must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer." "A jury is presumed to follow the circuit court's instructions." *Minor* at 648 S.W.3d at 731. Furthermore, "[q]uestions are not evidence, and even improper questions are generally not prejudicial if left unanswered." *State v. Huffman*, 445 S.W.3d 76, 81 (Mo.App. 2014). Defendant has not shown that the questioning regarding M.C. was improper propensity evidence or was so prejudicial as to warrant a mistrial. The brief exchange does not amount to the extraordinary circumstances required for the trial court to order a mistrial. Therefore, the trial court did not abuse its discretion by denying Defendant's request for a mistrial. Point II is

8

denied.

*Point III*

Finally, Defendant argues that the trial court erred in overruling his request for a mistrial after he objected to a question by the prosecutor during cross-examination of Defendant. While questioning Defendant about the allegations that he molested K.R., the prosecutor asked, "Got away with it; didn't you?" Although the question was clearly improper, it failed to arise to the level to warrant a mistrial. After defense counsel objected, the trial judge properly instructed the jury to disregard the question. "Normally, an instruction to the jury to disregard inadmissible evidence or improper argument is a sufficient remedy, as we must presume the jury has followed the court's instructions." **State v. McClendon**, 477 S.W.3d 206, 215 (Mo.App. 2015). Better judgment by the prosecutor would have certainly been to refrain from asking the question, but the trial judge was in the best position to evaluate any prejudicial effect of the question and determine the appropriate remedy. Because nothing in the record suggests the judge's instruction was an insufficient remedy, we cannot conclude that the court abused its discretion by declining to grant Defendant's request for a mistrial. Point III is denied.

The judgment of the trial court is affirmed.

BECKY J. W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, C.J. – CONCURS